Filed 11/27/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 242

State of North Dakota, ex rel. 

Nathan Kirke Madden, Assistant 

State’s Attorney, Williams County, Petitioner

v.

The Honorable Joshua B. Rustad, 

Judge of the District Court, 

Northwest Judicial District, and 

James Duane Christianson, Respondents

No. 20120305

Petition for Writ of Supervision.

SUPERVISORY WRIT GRANTED.

Opinion of the Court by Maring, Justice.

Nathan K. Madden, Assistant State’s Attorney, P.O. Box 2047, Williston, N.D. 58802, for petitioner.

Michael R. Hoffman, P.O. Box 1056, Bismarck, N.D. 58502-1056, for respondents.

Paul H. Myerchin, P.O. Box 995, Bismarck, N.D. 58502-0995, for amicus curiae North Dakota Association of Criminal Defense Lawyers.

State, ex rel. Madden v. Rustad

No. 20120305

Maring, Justice.

[¶1] The State of North Dakota, through Williams County Assistant State’s Attorney Nathan Kirke Madden, petitions this Court for a supervisory writ directing the district court to vacate a pretrial order requiring the State to produce the Director of the State Crime Laboratory at trial in the prosecution of James Christianson for driving while under the influence of alcohol.  The State argues the district court misinterpreted N.D.R.Ev. 707 to require the State to produce the Director for Christianson’s criminal trial.  We exercise our supervisory jurisdiction and direct the district court to vacate its order, concluding this record does not establish the Director made any testimonial statements in an analytical report assessing Christianson’s blood-alcohol content.

I

[¶2] Christianson was arrested for driving while under the influence of alcohol and submitted to a blood draw at a Williston hospital.  The analytical report from the blood draw showed Christianson’s blood-alcohol content was above the legal limit, and the State charged him with driving or being in actual physical control of a motor vehicle while under the influence of alcohol, or with a blood alcohol content above the legal limit.  The State notified Christianson under N.D.R.Ev. 707(a) that it intended to introduce into evidence at trial the analytical report from his blood test, which had been certified by a forensic scientist at the State Crime Laboratory, Roberta Grieger-Nimmo.  Christianson objected to the introduction of the analytical report under N.D.R.Ev. 707(b) and identified four witnesses to be produced at trial to testify about the report, including the specimen collector, the analyst, and the Director of the State Crime Laboratory.  The State thereafter moved to allow the introduction of the analytical report without the testimony of the Director, Hope Olson. 

[¶3] In a decision rendered before this Court’s decisions in 
State, ex rel. Roseland v. Herauf
, 2012 ND 151, 819 N.W.2d 546 and 
State v. Lutz
, 2012 ND 156, 820 N.W.2d 111, the district court denied the State’s motion to permit the admission into evidence of the analytical report without the testimony of Olson, ruling the State must produce Olson at trial under the plain language of N.D.R.Ev. 707:

First of all, with regard to the State’s Motion for Admissibility of Lab Results Without the Testimony of Hope Olson, it is important to note that the cases cited by the State, 
Melendez-Diaz v. Massachusetts
, 557 U.[S]. 305, 326-327 (2009) and 
State v. Gietzen
, 2010 ND 8[]2, 786 N.W.2d 1, both predate North Dakota Rules of Evidence 707, which was adopted effective February 1, 2010, and amended March 1, 2011.  While the 
Gietzen
 case was filed May 11, 2010, and modified June 30, 2010, trial was held on October 14, 2009, and that decision made no reference to, and did not rely on, Rule 707 in rendering its decision.  As such, the Court has not been directed to any cases addressing the issue.  

The Court finds that Rule 707 is clear in that if an analytical report is intended to be offered by the State, the Defendant must be notified in writing of its intent to introduce the report.  The Defendant may object, and identify the name or job title of the witness to be produced to testify about the report at trial.  If objection is made, the prosecutor 
must
 produce the person requested.  (emphasis added) The Court finds that the plain language of Rule 707 requires that Hope Olson be required to testify as Defendant has identified her and as she was listed on the State’s Notice of Rule 707 Evidence.  As such, the State’s motion for admissibility of analytical reports without the testimony of Ms. Olson is hereby DENIED.

II

[¶4] The State petitions this Court to exercise its original jurisdiction and issue a supervisory writ, arguing it is not required to produce Olson at trial because she made no testimonial statements in the analytical report and it has no alternative remedy available to address the district court’s interpretation of N.D.R.Ev. 707. 

[¶5] Under N.D. Const. art. VI, § 2, and N.D.C.C. § 27-02-04, we may review a district court decision under our supervisory authority.  
Herauf
, 2012 ND 151, ¶ 3, 819 N.W.2d 546.  We exercise our authority to issue supervisory writs rarely and cautiously on a case-by-case basis and only to rectify errors and prevent injustice in extraordinary cases when no adequate alternative remedy exists.  
Id.
  Our authority to issue a supervisory writ is discretionary.  
State v. Paulson
, 2001 ND 82, ¶ 6, 625 N.W.2d 528.  We generally will not exercise our supervisory jurisdiction where the proper remedy is an appeal.  
Id.
 

[¶6] We conclude this is an appropriate case to exercise our supervisory jurisdiction because the State lacks another adequate remedy.  The State’s ability to appeal is limited under N.D.C.C. § 29-28-07.  If Christianson were found not guilty by a jury, the State could not appeal.  
See
 
State v. Bernsdorf
, 2010 ND 123, ¶ 5, 784 N.W.2d 126; 
State v. Deutscher
, 2009 ND 98, ¶ 7, 766 N.W.2d 442; 
City of Bismarck v. Uhden
, 513 N.W.2d 373, 379 (N.D. 1994).  If Christianson were found guilty by a jury, on appeal he would not likely raise an issue about the order requiring the State to produce the Director at trial and the possibility the State could raise the issue is remote.  
See
 
State v. Holte
, 2001 ND 133, ¶ 6, 631 N.W.2d 595; 
State v. Sabinash
, 1998 ND 32, ¶ 19, 574 N.W.2d 827.

[¶7] The North Dakota Association of Criminal Defense Lawyers, as amicus curiae, argue this is not an extraordinary case necessary to rectify an error or prevent an injustice and the State has at least two adequate alternative remedies.  The Association of Criminal Defense Lawyers argues the State can either produce the Director at trial, or depose her and offer her deposition in lieu of her testimony.  Both alternatives require the State to comply with the district court order and, seemingly, reserve any challenge to the order for appeal.  However, as we explained above, the State would likely not be able to raise the issue on appeal, making the proposed remedies inadequate.  We therefore conclude this is an appropriate case to exercise our supervisory jurisdiction.  

III

[¶8] The State argues the district court misinterpreted N.D.R.Ev. 707 to require the State to produce the Director at trial, because the State claims the Director had no part in the analysis of Christianson’s blood sample and made no testimonial statements in the analytical report.  The State argues forensic scientist Grieger-Nimmo conducted the analytical test in this case and certified the results in the analytical report.  The State argues N.D.R.Ev. 707 does not require the State to produce whoever a defendant identifies in an objection, regardless of that person’s ability to testify about the analytical report.  Christianson responds that N.D.R.Ev. 707, when construed with N.D.C.C. § 39-20-07, requires the State to produce the Director if a defendant objects to the introduction of an analytical report under N.D.R.Ev. 707(b) and identifies the Director as a witness to be produced at trial.

[¶9] The issue in this case involves the admissibility of the analytical report in the context of N.D.R.Ev. 707, N.D.C.C. § 39-20-07, and the Confrontation Clause of the Sixth Amendment of the United States Constitution.  The Confrontation Clause, made applicable to the States under the Fourteenth Amendment, 
Pointer v. Texas
, 380 U.S. 400, 403 (1965), provides that “[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.”  

[¶10] In 
Crawford v. Washington
, 541 U.S. 36, 51 (2004), the United States Supreme Court reviewed the historical underpinnings of the Confrontation Clause.  The Court said the Confrontation Clause guarantees an accused’s right to confront “‘witnesses’ . . . who ‘bear testimony’” against the accused and “‘[t]estimony,’ in turn, is typically ‘[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.’” 
Id.
 (citations omitted).  The Court explained the “constitutional text . . . reflects an especially acute concern with a specific type of out-of-court statement” and said “[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.”  
Id.
  The Court described the type of  “testimonial statements” invoking an accused’s confrontation rights:

Various formulations of this core class of “testimonial” statements exist: “
ex parte
 in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially”; “extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions”; “statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]” 

Crawford
, at 51-52 (citations omitted).  The 
Crawford
 Court held a statement taken by law enforcement officers in the course of the interrogation of a witness was a testimonial statement under the Confrontation Clause and reversed a defendant’s conviction because the statement was admitted into evidence without affording the defendant the right to confront that witness, who was unavailable for trial.  
Id.
 at 53, 68-69. 

[¶11] In 
Melendez-Diaz v. Massachusetts
, 557 U.S. 305, 310-11 (2009), the United States Supreme Court applied 
Crawford
 to the results of the forensic analysis performed on seized substances thought to be cocaine and held certificates of analysis, which were in affidavit form and showed the results of the forensic analysis, were within the “core class of testimonial statements” for confrontation purposes.  The Court reiterated the meaning of the “core class of testimonial statements” from 
Crawford
, 541 U.S. at 51-52, and explained the certificates of analysis were within that core class because they were “solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving . . . that the substance . . . was, as the prosecution claimed, cocaine—the precise testimony the analyst would be expected to provide if called at trial.”  
Melendez-Diaz
, 557 U.S. at 310 (quoting 
Crawford
, 541 U.S. at 51).  The Court said the certificates of analysis were functionally identical to live, in-court testimony and were made under circumstances that would lead an objective, reasonable witness to believe the certificates would be used later at trial.  
Melendez-Diaz
, at 310-11.  The Court explained “under Massachusetts law the 
sole purpose
 of the affidavits was to provide ‘prima facie evidence of the composition, quality, and the net weight’ of the analyzed substance[.]”  
Id.
 at 311 (quoting Mass. Gen. Laws, ch. 111, § 13 (2004)).  The Court held absent a showing the analysts who prepared the certificates of analysis were unavailable for trial and the defendant had a prior opportunity to cross-examine them, the defendant was entitled to confront the analysts at trial and the prosecution could not introduce the certificates without providing the analysts to testify to the truth of the statements made in the reports.  
Melendez-Diaz
, 557 U.S. at 311.  The Court explained the scope of its holding, however: 

Contrary to the dissent’s suggestion, . . . we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution’s case. While the dissent is correct that “[i]t is the obligation of the prosecution to establish the chain of custody,” . . . this does not mean that everyone who laid hands on the evidence must be called.

Id.
 at 311, n.1.

[¶12] In 
Bullcoming v. New Mexico
, 131 S.Ct. 2705, 2709 (2011), the Supreme Court applied 
Melendez-Diaz
 in the context of a prosecution for driving under the influence of alcohol and the State’s introduction into evidence of a forensic report certifying the defendant’s blood-alcohol concentration was over the legal limit. The analyst who prepared and signed the certification was not available at trial, and the State called a different analyst, who was familiar with the laboratory’s testing procedures but did not participate in or observe the test on the defendant’s blood sample.  
Id.
  The Court held the admission of the certified report violated the defendant’s confrontation rights because the report was created for an evidentiary purpose as part of a police investigation and was testimonial.  
Id.
 at 2710, 2717.  The Court said the fact the report was unsworn was not dispositive in deciding it was testimonial, because the formalities accompanying the report, including the preparer’s signature, were sufficient to bring the report within the “core class of testimonial statements.”  
Id.
 at 2717.

[¶13] Rule 707, N.D.R.Ev., was adopted effective February 1, 2010, to address confrontation issues involving the admissibility of analytical reports in North Dakota courts in response to 
Melendez-Diaz
.  
See
 N.D.R.Ev. 707, Explanatory Note and Sources.  Rule 707, N.D.R.Ev., provides in part:

(a) Notification to Defendant.
  If the prosecution intends to introduce an analytical report issued under N.D.C.C. chs. 19-03.1, 19-

03.2, 19-03.4, 20.1-13.1, 20.1-15, 39-06.2, or 39-20 in a criminal trial, it must notify the defendant or the defendant’s attorney in writing of its intent to introduce the report and must also serve a copy of the report on the defendant or the defendant’s attorney at least 30 days before the trial.

(b) Objection.
  At least 14 days before the trial, the defendant may object in writing to the introduction of the report and identify the name or job title of the witness to be produced to testify about the report at trial.  If objection is made, the prosecutor must produce the person requested.  If the witness is not available to testify, the court must grant a continuance. 

(c) Waiver.
  If the defendant does not timely object to the introduction of the report, the defendant’s right to confront the person who prepared the report is waived. 

[¶14] In 
Herauf
, 2012 ND 151, ¶ 15, 819 N.W.2d 546, a majority of this Court held a blood drawer’s signed statement that a blood sample was properly drawn was a testimonial statement because that statement was prima facie evidence the sample was properly drawn under N.D.C.C. § 39-20-07(10).  The majority explained N.D.R.Ev. 707 must be interpreted in light of N.D.C.C. § 39-20-07, which governs the admission of analytical reports into evidence under North Dakota law.  
Herauf
, at ¶ 11.  The majority said the legislature intertwined analytical reports and blood draws under the statute, which required interpreting N.D.R.Ev. 707 to include blood draws as well as analytical reports.  
Herauf
, ¶ 11.  The majority explained 
Melendez-Diaz
 and N.D.R.Ev. 707 essentially negated the shortcut provisions of N.D.C.C. § 39-20-07(5) and (8) for admission of an analytical report if a defendant objects to the admission of the report without the analyst’s testimony.  
Herauf
, at ¶ 13.  In considering those evidentiary shortcuts, the majority concluded the signed statement of the blood drawer under N.D.C.C. § 39-20-07(10) was a testimonial statement, explaining:

under the statute, a prerequisite to admission of an analytical report is a signed statement from the individual medically qualified to draw the blood sample that the blood sample was properly drawn.  N.D.C.C. § 39-20-07(5) and (10); 
Schlosser
, 2009 ND 173, ¶ 9, 775 N.W.2d 695. Section 39-20-07(10), N.D.C.C., provides: “[a] signed statement from the individual medically qualified to draw the blood sample for testing as set forth in [N.D.C.C. § 39-20-07] subsection 5 is prima facie evidence that the blood sample was properly drawn[.]”  Rather than a foundational requirement, 
see
 
State v. Gietzen
, 2010 ND 82, ¶¶ 16-19, 786 N.W.2d 1, 
State v. Friedt
, 2007 ND 108, ¶¶ 7, 10-11, 13, 735 N.W.2d 848, we conclude the “signed statement” contemplated under N.D.C.C. § 39-20-07(10) constitutes a testimonial statement.  The signed statement is akin to an affidavit, which is testimonial, 
see
 
Crawford
, 541 U.S. at 51-52, because it is a “solemn declaration or affirmation made for the purpose of establishing or proving” that the blood sample was properly obtained.  
Melendez-Diaz
, 129 S.Ct. at 2532 (quoting 
Crawford
, 541 U.S. at 51).  The fact that the signed statement is unsworn is not dispositive in determining if the statement is testimonial. 
Bullcoming
, 131 S.Ct. at 2717.  Also, as in 
Melendez-

Diaz
, the sole purpose of the signed statement in subsection 10 is to establish prima facie evidence that the blood sample was properly drawn.  N.D.C.C. § 39-20-07(10); 
see
 
Melendez-Diaz
, 129 S.Ct. at 2532.

Herauf
, at ¶ 14.  In 
Herauf
, at ¶ 15, the majority concluded “N.D.R.Ev. 707, when construed with N.D.C.C. § 39-20-07 and the constitutional rights it provides, requires the State to produce the individual who drew the defendant’s blood sample if the defendant objects under N.D.R.Ev. 707(b) and identifies the individual who drew the defendant’s blood as a witness to be produced at trial.”

[¶15] In 
Lutz
, 2012 ND 156, ¶ 5, 820 N.W.2d 111, a majority of this Court reaffirmed 
Herauf
 as it pertains to the person signing a statement as a blood drawer.  However, we held N.D.R.Ev. 707 did not require the State to produce at trial the individual who prepared the volatiles solution used in the chemical test, because there was no statute similar to N.D.C.C. § 39-20-07(10) for the individual who prepared that solution and that individual’s expected testimony fell squarely within the rule for establishing the chain of custody, authenticity of the sample, or accuracy of the testing device.    
Lutz
, at ¶¶ 6-11 (citing 
Melendez-Diaz
, 557 U.S. at 311, n.1).  We explained “nothing in the record . . . suggest[ed] that the solution or the [preparer’s] statement were prepared under circumstances that would lead the [preparer] or an objective witness to reasonably believe the solution or statement would be used for prosecutorial purposes at a later trial or that the solution was even prepared for the purpose of testing any person’s blood for intoxication while driving.”  
Lutz
, at ¶ 8.  We also held the State was not required to produce at trial mail carriers or other evidence custodians involved with the blood sample because their roles related to the chain of custody and not to testimonial statements in the analytical report.  
Lutz
, at ¶ 12.  

[¶16] In 
Herauf
 and 
Lutz
, we construed N.D.R.Ev. 707 in conjunction with the evidentiary shortcuts authorized under N.D.C.C. § 39-20-07 and the rights protected by the Confrontation Clause and held an accused may require the State to produce at trial witnesses who make testimonial statements in the prima facie evidence authorized under the evidentiary shortcuts, including the analytical reports and the statement signed by a medically qualified blood drawer.  In 
Herauf
 and 
Lutz
, the substance of those statements were prepared for a prima facie evidentiary purpose and were testimonial.  

[¶17] This record does not establish the Director conducted the blood analysis or otherwise participated in any manner in the analysis.  Although the Director’s job title is mentioned in forensic scientist Grieger-Nimmo’s certification to the extent Grieger-

Nimmo is a “designee” of the Director, nothing in the certification or analytical report constitutes a testimonial statement by the Director for confrontation purposes.  There is no statutory language like the language in N.D.C.C. § 39-20-07(10), which requires the Director to make testimonial statements in the prima facie evidence established under the evidentiary shortcuts in N.D.C.C. § 39-20-07.  Nothing in the Director’s expected testimony would prove the substance of the results of the analytical report, or that the blood sample was properly drawn.  Under 
Herauf
 and 
Lutz
 in conjunction with N.D.R.Ev. 707 and the evidentiary shortcuts authorized by N.D.C.C. § 39-20-07, the State is not required to provide the Director as a witness at trial to satisfy the Confrontation Clause because this record does not establish the Director conducted or otherwise participated in the blood analysis or made any testimonial statements in analytical reports.

[¶18] During oral argument to this Court, Christianson candidly admitted he identified the Director in his objection under N.D.R.Ev. 707(b) to preserve a possible foundation objection at trial.  The requirements of N.D.R.Ev. 707 deal with confrontation issues and not foundation issues, and an objection under N.D.R.Ev. 707(b) is not a necessary precursor to preserve a foundation objection for trial.  
See
  N.D.R.Ev. 707(c) (“If the defendant does not timely object to the introduction of the [analytical] report, the defendant’s right to confront the person who prepared the report is waived.).  

[¶19] We conclude the district court’s interpretation of N.D.R.Ev. 707(b) that any requested witness “must” be produced at trial is too broad.  The State need not produce designated persons for confrontation purposes if those persons do not make testimonial statements in analytical reports.  
See
 
Lutz
, 2012 ND 156, ¶¶ 6-12, 820 N.W.2d 111.  Christianson may subpoena the Director, but the State is not required to provide the Director at trial for confrontation purposes.  
See
 
id.
 at ¶¶ 11-12. 

IV

[¶20] We exercise our supervisory jurisdiction and direct the district court to vacate its order.  

[¶21] Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.